CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
MAY 08 2018
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RANDY MORINGS,<br>    Plaintiff, | Civil Action No. 7:16-cv-00139 |
| v. | <u>MEMORANDUM OPINION</u> |
| MS. D. WELLS, et al.,<br>    Defendants. | By:   Hon. Michael F. Urbanski<br>       Chief United States District Judge |

Randy Morings, a Virginia inmate proceeding pro se, had filed a civil rights complaint pursuant to 42 U.S.C. § 1983, naming D. Wells as the sole defendant. Plaintiff had alleged that Wells, who was the Health Authority at River North Correctional Center ("RNCC"), exhibited deliberate indifference to a serious medical need in violation of the Eighth Amendment of the United States Constitution. Wells had filed a motion for summary judgment that the court granted. However, the court also allowed Plaintiff to file an amended complaint that states a claim upon which relief may be granted against RNCC medical staff Nurse Walls and Lab Technician S. Lark, pursuant to Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978).

Plaintiff filed the amended complaint, and presently before the court are Lark's motion to dismiss and Walls' motions to dismiss and for summary judgment. Although given the opportunity to do so, Plaintiff failed to timely respond to the motions.[1] After reviewing Defendants' motions and the amended complaint, the court denies Lark's motion to dismiss, grants in part and denies in part Nurse Wall's motion to dismiss, grants Nurse Wall's motion for summary judgment, and orders Lark to file a motion for summary judgment.

---

[1] Plaintiff did not hand his response to prison officials for mailing until, at the earliest, on December 21, 2017, which is nearly two months overdue from the first dispositive motion and nearly a month overdue from the last dispositive motion. See, e.g., Houston v. Lack, 487 U.S. 266, 275 (1988) (describing the prison-mailbox rule). Giving a pro se complaint the benefit of a liberal construction does not mean that "procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." McNeil v. United States, 508 U.S. 106, 113 (1993); Wayne v. Jarvis, 197 F.3d 1098, 1104 (11th Cir. 1999) ("Liberal construction does not mean liberal deadlines."). Plaintiff has not moved for an extension of time, either before or after the deadline passed. Accordingly, the court does not consider the untimely response in opposition to Defendants' motions.

# I.
## A.

The court considers the allegations in both the original complaint and the amended complaint.[2] The factual allegations recited in the amended complaint are brief:

> As I stated in a prior complaint, on July 8, 2015, I was placed in Special Housing (SHU) for a disciplinary infraction and while housed there, I submitted several request forms for medical treatment. Although I was told repeatedly that I was being placed on the sick call to see the doctor, I was never given an appointment.
>
> Because of the delay in receiving treatment, my arm, later determined to have been broken, was never repaired and still gives me problems and pain.
>
> During the review of my initial complaint, it was determined that [Nurse Walls and S. Lark] were responsible for the denial of treatment and this Court permitted me to file this amended complaint naming Nurse Walls and S. Lark as proper defendants.

(Am. Compl. 2.)

The factual allegations recited in the original complaint are slightly more descriptive:[3]

> On July 8, 2015, I was placed in Special Housing Unit (SHU) for a Disciplinary Infraction and while in SHU I told [Nurse Walls] that I was having a lot of "pain" in my right arm. [Nurse Walls] told me that it was just bruised. After about a week had passed[,] my arm was still hurting and the swelling had not gone down. I wrote a request form to the nurse and asked to be seen. I got the request form back and was informed [by Nurse Walls] that I will be on the list to be seen. However, after about 2 weeks had passed[,] I

---

[2] An amended pleading typically supersedes the original pleading, giving the original pleading no effect. Young v. City of Mount Ranier, 238 F.3d 567, 572 (4th Cir. 2001). This principle does not, however, apply if the amended complaint "specifically refers to and incorporates by reference the earlier pleading." McManus v. Williams, 519 F. Supp. 2d 1, 5 (D.D.C. 2007). Federal Rule of Civil Procedure 10(c) provides that "[a] statement in a pleading may be adopted by reference . . . in any other pleading or motion." Incorporation by reference under Rule 10(c) must, however, "be direct and explicit" so that the responding party may "ascertain the nature and extent of the incorporation." Hinton v. Trans Union, LLC, 654 F. Supp. 2d 440, 446 (E.D. Va. 2009), aff'd, 382 F. App'x 256 (4th Cir. 2010). A court "has broad discretion, based on the factual and procedural history of a particular case, to accept or to reject attempts at wholesale incorporation of superseded pleadings." Id. at 447 n.16.

The amended complaint does not try to alter the allegations or claims in the original complaint but merely seeks to more accurately address the claims as to the correct defendants. Considering that Plaintiff proceeds pro se, the court will be more permissive and deem the amended complaint as incorporating the original complaint. Accordingly, the court considers both the original and amended complaints as Plaintiff's pleading.

[3] The court has added the alterations for defendants' names, based on the record, to make it clearer what is alleged against Nurse Walls and Lark.

2

> had not yet seen the doctor, so I wrote another request for medical attention on August 13, 2015 and was told [by Lark] I have been scheduled for an appointment. On October 6, 2015, I finally went and seen the doctor after waiting over 90 days, was given an X-ray and the test revealed that my arm was broken. This was determined by Dr. Stevens. On October 19, 2015, some (13) days later, I still have not receive medical treatment for my broken arm, so I then wrote an informal complaint attesting the denial of ... RNCC[] Medical Department not rendering the correct medical services for a broken elbow/arm. Ms. D. Wells, Registered Nurse (RN)[,] stated in response to my informal complaint that "you were seen by the nurse in October for an injury that occurred 4-months prior; the Radiologist Report stated old fracture-no new fracture[."] So on October 30, 2015, I filed a grievance contesting the Deliberate and Indifferent... denial of Medical Health Care service for a Serious Medical Condition (i.e. broken/fractured elbow).
>
> * * *
>
> My complaint is that I was provided inadequate medical attention for a serious medical need. [Nurse Walls] told me that my arm was bruised when in fact it was broken. She provided a medical opinion without, however, any medical test being conducted. After being informed by Dr. Stevens that my arm was broken[,] I was not given any treatment to fix the break. My arm is now permanently damaged beyond repair.

(Orig. Compl. 2-3.)

The claims against Nurse Walls and Lark can be distinguished from these allegations. Nurse Walls' involvement with Plaintiff's treatment is limited to the initial examination and diagnosis on July 8, 2015, and responding to the first request for services form. Lark's involvement with Plaintiff's treatment is limited to her responses to the last two requests for service forms.

### B.

Plaintiff's medical records reflect that Nurse Walls examined Plaintiff on July 8, 2015.[4] Plaintiff complained of right arm and shoulder pain. Nurse Walls noted that the area near the right

---

[4] The record has been developed in support of Wells' and Nurse Walls' motions for summary judgment.

elbow was "slightly swollen," Plaintiff could bend his arm and move his fingers, and Plaintiff did not complain of numbness or tingling. A neurovascular exam was within normal limits.

Virginia Department of Corrections ("VDOC") Operating Procedure ("OP") 720.1,[5] "Access to Health Services," says an inmate should be triaged within twenty-four hours and be examined by medical staff within ninety-six hours, at most, after the inmate submits a medical request. An inmate who submits a request for emergency medical care should be handled immediately and no later than within twenty-four hours.

Plaintiff's administrative record reveals that Plaintiff filed three request forms asking to see the doctor during the summer and fall of 2015. Despite Nurse Walls' and Lark's repeated responses for months that Plaintiff would be or had been put on the list, Plaintiff had not been added to the list and did not see a doctor until October 6, 2015.

Plaintiff filed the first request for services on July 29, 2015, stating that his arm was swollen and painful, that he could not move it, and that he wanted to be added to the list to see the doctor. On August 1, 2015, Nurse Walls responded, "You will be placed on the list to see the doctor."

Plaintiff filed the second request for services on August 13, 2014, stating that his arm still hurt, he still needed to see a doctor, and he wanted to see a doctor as soon as possible. On August 14, 2015, Lark responded, "You have been placed on the list to be scheduled a medical appt."

Plaintiff filed the third request for services sometime around the end of the first week in September 2015, stating, "I have been putting in request after request about my elbow causing a lot

---

[5] The policy was attached in support of prior defendant Wells' supplemental motion for summary judgment. Plaintiff had not challenged the policy's application to the case.

of 'pain' and no one has called me over yet can I please see someone about this please?" On September 8, 2015, Lark again replied that Plaintiff was on the list.

On October 6, 2015, Plaintiff presented for a sick call and complained about tingling in his fingers and recurring pain, swelling, and tenderness. An X ray of his arm revealed an obvious fracture, Plaintiff met with a private orthopedist on December 16, 2015, and elbow surgery occurred in January 2016.

The administrative remedy record shows Plaintiff submitted an informal complaint on October 20, 2015, and a regular grievance on October 30, 2015. Plaintiff wrote in the informal complaint how he learned on October 6, 2015, that Nurse Walls' diagnosis from July was incorrect. In the regular grievance, Plaintiff reiterated Nurse Walls' incorrect diagnosis and "assert[ed] a denial of medical care for a broken elbow[] [i]n which he has not received medical services thereof even as of this date (10/30/2015)!" Plaintiff also complained that he had not been seen within four days as required by policy and noted that he requested medical service in August 2015 but had not been seen until October 2015. The regular grievance was rejected at intake as untimely filed, and the intake decision was upheld on appeal.

## II.
### A.

The court must dismiss an action or claim filed by an inmate if the court determines that the action or claim is frivolous or fails to state a claim on which relief may be granted. See 28 U.S.C. §§ 1915(e)(2), 1915A(b)(1); 42 U.S.C. § 1997e(c). The first standard includes claims based upon "an indisputably meritless legal theory," "claims of infringement of a legal interest which clearly does not exist," or claims where the "factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989). The second standard is the familiar standard for a motion to

dismiss under Federal Rule of Civil Procedure 12(b)(6), accepting a plaintiff's factual allegations as true. A complaint needs "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). A plaintiff's basis for relief "requires more than labels and conclusions . . . ." Id. Therefore, a plaintiff must "allege facts sufficient to state all the elements of [the] claim."[6] Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003).

**B.**

A party is entitled to summary judgment if the pleadings, the disclosed materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if, in viewing admissible evidence and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial. Id. at

---

[6] Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). Thus, a court screening a complaint under Rule 12(b)(6) can identify pleadings that are not entitled to an assumption of truth because they consist of no more than labels and conclusions. Id. Although the court liberally construes pro se complaints, Haines v. Kerner, 404 U.S. 519, 520-21 (1972), the court does not act as an inmate's advocate, sua sponte developing statutory and constitutional claims not clearly raised in a complaint. See Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985); see also Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (recognizing that a district court is not expected to assume the role of advocate for a pro se plaintiff).

322-24. A party is entitled to summary judgment if the admissible evidence as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). A plaintiff cannot use a response to a motion for summary judgment to amend or correct a complaint challenged by the motion for summary judgment. Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009).

## C.

State actors impose cruel and unusual punishment in violation of the Eighth Amendment when they are deliberately indifferent to a serious medical need. See, e.g., West v. Atkins, 487 U.S. 42, 48 (1988); Estelle v. Gamble, 429 U.S. 97, 104 (1976); Conner v. Donnelly, 42 F.3d 220, 222 (4th Cir. 1994). A serious medical need is a condition that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008).

Deliberate indifference requires a state actor to have been personally aware of facts indicating a substantial risk of serious harm, and the actor must have actually recognized the existence of such a risk. Farmer v. Brennan, 511 U.S. 825, 838 (1994). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990); see Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) ("[T]he evidence must show that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'"). "A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable

person in the defendant's position." Miltier, 896 F.2d at 851-52. A health care provider may be deliberately indifferent when the treatment provided is so grossly incompetent, inadequate, or excessive as to shock the conscience or is intolerable to fundamental fairness. Id. at 851. To succeed with an unconstitutional medical treatment claim against non-treating staff, a plaintiff must show that the staff was personally involved with a denial of treatment, deliberately interfered with a prison doctor's treatment, or tacitly authorized or was deliberately indifferent to the medical provider's misconduct when even a lay person would understand that the medical provider is being deliberately indifferent. Id. at 854.

### III.

Nurse Walls and Lark argue in their motions to dismiss that Plaintiff fails to state a claim against them upon which relief can be granted. Their motions are denied as to claims of delayed medical care, but Nurse Walls' motion is granted as to the alleged misdiagnosis on July 8, 2015.

It is not clear whether Nurse Walls or Lark intended to add Plaintiff to the list and forgot, Lark had relied on Nurse Walls' prior assertion that Plaintiff would be on the list, or some other circumstance caused Plaintiff's name to be omitted from the appointment list. Nonetheless, Plaintiff states a plausible claim that each defendant was personally involved with the denial of treatment and recklessly disregarded Plaintiff's pleas for a doctor to treat his swollen, painful, immobile arm that had been injured weeks to months earlier. With each form, Plaintiff noted the pain he felt while waiting for an appointment and asked to be seen as soon as possible. While Defendants repeatedly told Plaintiff that he was on the appointment list, he was not given an appointment for months due ostensibly to their failure to add him to the list. Accordingly, Defendants' motions to dismiss are denied as to the delayed treatment claims.

However, Plaintiff presents, at most, a claim of an initial misdiagnosis of a hidden injury. Plaintiff merely alleges for this claim that he presented to Nurse Walls with pain and swelling in his arm, which is indisputably both a common injury that manifests as bruising, and Nurse Walls diagnosed him as having sustained a bruising injury. Plaintiff has not alleged that the injury seen on July 8, 2015, was so extreme to plausibly support an inference that the misdiagnosis was so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. Even if Nurse Walls' diagnosis was proven wrong, a claim of misdiagnosis is not actionable under the Eighth Amendment. See, e.g., Rouster v. Cty. of Saginaw, 749 F.3d 437, 446-47 (6th Cir. 2014) (recognizing a plaintiff must show more than negligence or the misdiagnosis of an ailment for an Eighth Amendment claim); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998) (holding negligence in misdiagnosis of pituitary tumor not sufficient for an Eighth Amendment claim). Accordingly, Nurse Walls' motion to dismiss is granted in part as to the misdiagnosis claim.

## IV.

Nurse Walls argues in her motion for summary judgment that Plaintiff failed to exhaust available administrative remedies. The court finds that Plaintiff failed to exhaust available administrative remedies about the remaining delayed treatment claim against Nurse Walls.

The exhaustion requirement is mandatory and "applies to all inmate suits about prison life[.]" Porter v. Nussle, 534 U.S. 516, 524, 532 (2002). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 90 (2006). When a prison provides an administrative grievance procedure, the inmate must file a grievance raising a particular claim and pursue it through all available levels of appeal to "properly

9

exhaust." Id.; Dixon v. Page, 291 F.3d 485, 490-91 (7th Cir. 2002). Once a defendant presents evidence of a failure to exhaust, the burden of proof shifts to the plaintiff to show, by a preponderance of the evidence, that exhaustion occurred or administrative remedies were unavailable through no fault of the plaintiff. See, e.g., Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011); Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). "When an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion." Ross v. Blake, 578 U.S. __, 136 S. Ct. 1850, 1859 (2016).

OP 866.1, "Offender Grievance Procedure," provides the administrative remedies for inmates to resolve complaints, appeal administrative decisions, and challenge policies and procedures. The process provides correctional administrators means to identify potential problems and, if necessary, correct those problems in a timely manner. All issues are grievable except issues about policies, procedures, and decisions of the Virginia Parole Board; disciplinary hearing penalties and/or procedural errors; state and federal court decisions, laws, and regulations; and other matters beyond the VDOC's control. Inmates are oriented to the inmate grievance procedure when they enter the VDOC's custody and when they are transferred to other VDOC facilities.

Prior to submitting a grievance, the inmate must make a good-faith effort to informally resolve the issue by submitting an informal complaint form, which is available in housing units.[7] If the issue is not informally resolved, the inmate must file a regular grievance within thirty calendar days from "the date of occurrence/incident or discovery of the occurrence/incident" except certain circumstances like instances beyond the inmate's control. Regular grievances that do not meet the filing requirements of OP 866.1 are returned to the inmate within two working

---

[7] An inmate is not required, however, to file an informal complaint about an alleged incident of sexual abuse.

days from the date of receipt. An inmate may appeal an intake decision by sending the grievance and the intake decision to a regional ombudsman within five days of receipt. There is no further review of the intake decision.[8]

Plaintiff fails to establish that he exhausted available administrative remedies or that remedies were unavailable. The record shows that Plaintiff wanted to see the doctor as of July 29, 2015, because his arm was swollen, immobile, and painful. Nearly two weeks after Nurse Walls responded to the first request for services, Plaintiff was aware on August 13, 2015, that he still had not seen a doctor and his arm still hurt. Plaintiff was still aware during the first week of September 2015 that he still had not seen a doctor since his first request in July despite Nurse Walls' assertion on August 1, 2015, that he would be seen. Plaintiff acknowledged in his regular grievance submitted on October 30, 2015, that he had requested medical service in August 2015 and had not been seen within the four day limit set by policy. Consequently, the record establishes that Plaintiff was aware he had not been seen within four days as required by policy for more than thirty days before he filed the regular grievance. A court may not excuse a failure to exhaust available remedies, even to take into account "special circumstances." Ross, 136 S. Ct. at 1856. Accordingly, Nurse Wall's motion for summary judgment is granted in part as to the delayed treatment claim due to Plaintiff's failure to exhaust available administrative remedies.

V.

For the foregoing reasons, the court denies Lark's motion to dismiss, grants in part and denies in part Nurse Walls' motion to dismiss, and grants Nurse Walls' motion for summary

---

[8] Grievances that are accepted receive up to three levels of review. A warden conducts the first, "Level I" review. If the inmate is unsatisfied with the Level I determination, the inmate may appeal the determination within five days of receipt to Level II, which is usually done by a regional ombudsman. For most issues, Level II is the final level of review. For the few issues appealable to Level III, the inmate may appeal the Level II determination within five days of receipt to a deputy director or the Director of the VDOC.

judgment. Lark shall file a motion for summary judgment supported by affidavit(s) within thirty days pursuant to Standing Order 2013-6.

**ENTER:** This 7th day of May, 2018.

/s/ Michael F. Urbanski
―――――――――――――――――
Chief United States District Judge